(33 Misc. Rep. 191.)

### NEWCOMB v. NEWCOMB.

(Supreme Court, Special Term, New York County. November, 1900.)

1. WILLS—CONSTRUCTION—PROPERTY COVERED BY RESIDUARY CLAUSE.

A testator by the first clause of his will bequeathed to his wife an annual income of $10,000 in gold, sufficient of his estate to be "set aside," so that the income thereof would net that sum. By the second clause he directed that, after providing for the above, $200,000 in gold should be held in trust to the use of his only child for life, remainder to his wife absolutely, if the child died before her without issue, for whose benefit otherwise the trust was to be continued until they all reached 21, when the principal was to be divided between them. By the third and last clause he gave to his wife specified personal property, and, after providing for the previously named bequests, the residue of his estate absolutely, and provided that if she should die first the property set apart for her income should revert to his child on reaching 21. *Held* that, in the event of the child dying intestate and unmarried before the widow, the latter took the entire estate under the residuary clause in her favor, including the property set apart for her annual income.

2. SAME—TESTAMENTARY TRUST—TERMINATION—DUE PROCESS OF LAW.

Where a testator's widow succeeds to an estate in remainder after an estate in trust for her use for life in personalty created by the will before Laws 1893, c. 452, Laws 1896, c. 547, art. 3, and Laws 1897, c. 417, § 3, were enacted, she cannot terminate the trust pursuant thereto, and obtain possession of the trust fund, since she would thereby deprive

the trustees of their right to compensation, and thus take their property without due process of law.

Action by Josephine Louise Newcomb, as sole surviving trustee under the will of Warren Newcomb, against herself, individually, and others, to construe the will and for an accounting. Will construed, and decree ordered to be submitted in accordance therewith.

Lord, Day & Lord, for plaintiffs.

Swayne & Swayne (Henry T. Fay, of counsel), for defendants H. Victor Newcomb and others.

Wilmer & Canfield (James McConnell and George F. Canfield, of counsel), for defendant Josephine Louise Newcomb.

Andrew McKinley, for defendant H. Dalton Newcomb.

Robert A. Paddock, for defendant Frank E. Carpenter.

LEVENTRITT, J. Action for the construction of a will and for an accounting. The primary question involved in this litigation is the ownership of a certain remainder, the contest being between the widow of the testator and his heirs at law. Warren Newcomb, the testator, died on the 28th day of August, 1866, leaving a last will and testament, consisting of three paragraphs, as follows:

"First. I give and bequeath to my beloved wife Josephine Louisa Newcomb an annual income of ten thousand (10000) dollars pr. annum in Gold or its equivalent sufficient of my estate to be set aside and invested in good securities the income of which will net ten thousand dollars gold pr. annum.

"Second. After providing for the above I devise to Junius B. Alexander Solon Hamphiner both of the City of New York and Henry Morgan of Whitestone Queens County New York two hundred thousand dollars in gold or its equivalent in trust to hold said money for the sole and separate use of my daughter Harriet Sophie Newcomb (free from the control or use of any husband she may have) for her life time the money to be loaned or invested in such securities as the trustees may deem most advantageous to the trust the investment to be changed at any time the trustees may deem it best see page no 2 so as to make as near a certain income as possible after paying taxes and other necessary expenses the balance of the actual income to be applied to a liberal support and education of my daughter during her minority the surplus to accumulate when she arrives at the age of twenty one years the accumulation of interests after all her expenses to be made over to her if my daughter should die without issue this devise or trust is to revert to my wife Josephine Louisa Newcomb absolutely but if she should die leaving issue then the trust is to continue for the benefit of such issue until all of such issue arrive at the age of twenty one years then the said sum of two hundred thousand dollars or the securities in which it may be invested, shall be divided between them (pr. stirpes) should any one of said trustees decline to serve or die the remaining two shall elect a third who shall have the same power to act as those previously named my first and principal object in making this devise is to secure to my daughter a certain support or as near so as possible and to tie up this two hundred thousand dollars so that no one can take it from her and that the principal will not be subject to her debts if she should make any.

"Third. I do give and devise to my dear wife Josephine Louisa Newcomb all my carriages horses harness, also all my and her silver ware jewelry of all kinds including diamonds and watches absolutely after providing for all the previously named bequests I give and devise to my dear wife Josephine Louisa Newcomb all the residue of my estate absolutely. in the event of the death of my wife Josephine Louisa Newcomb before my daughter Harriet Sophie then the amount set aside in article No. 1 to provide for my wifes annual income and all the residue of my estate shall revert absolutely to my

daughter Harriott Sophie Newcomb upon her arriving at the age of twenty one years in the intervening time to be invested by my executors and administrators until she arrives at that age I hereby appoint my dear wife Josephine Louise Newcomb, Adolf Rodewald of New York, George D. Morgan of Irvington as my executors and administrators with a request that they will conform to my wife's wishes as far as practical they to receive a proper compensation for their services."

This will was duly admitted to probate on the 17th day of September, 1866. The daughter, Harriet Sophie Newcomb, the only child of the testator, died intestate and unmarried on the 16th day of December, 1870. Under the will the trust provided for in paragraph 2 reverted to the widow, Josephine Louise Newcomb. No question is raised concerning that fund. The present action is brought by the widow, as sole surviving trustee, under paragraph 1 of the will, against herself, individually, and the heirs at law of Warren Newcomb, as defendants, praying for a settlement of the accounts as trustee, and for a construction of the first paragraph of the will, so far as it relates to the remainder in the fund set aside to produce the annual income of $10,000 in gold. The widow has answered in her individual capacity, and, claiming title to the disputed remainder, has executed a release for the purpose of terminating the trust and obtaining absolute possession of the fund. Laws 1893, c. 452; Laws 1896, c. 547, art. 3; Laws 1897, c. 417, § 3. Her co-defendants, the heirs at law, dispute her title to the remainder, and also dispute the right in any event to terminate the trust at this time.

To consider first the question of the remainder: Did it pass to the widow, under the residuary clause in the will, or did that fail to dispose of it, thus creating an intestacy as to so much of Warren Newcomb's property? The testator devises and bequeaths to his dear wife, Josephine Louise Newcomb, all the residue of his estate, absolutely, "after providing for all the previously named bequests." Are the words "after providing" words of limitation or exclusion, or simply words of description? In the former aspect the residuary bequest would only be partial; in the latter, general. It is conceded that it requires a general residuary bequest to place the title to the fund in the widow. The residuary clause, however, acquires its true meaning only in the light of the fundamental canon of construction,—the intention of the testator as disclosed by the whole will. In seeking that it is well to bear in mind that a broad construction is to be preferred to a narrow one (Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133), and that, in the face of a will attempting to dispose of all the testator's property, all presumptions are against even a partial intestacy (Hoppock v. Tucker, 59 N. Y. 203; Meeks v. Meeks, 161 N. Y. 66, 55 N. E. 278). If the evinced intention, however inadequately expressed, is not in conflict with recognized rules of law or with some statute, the court, placing itself in the position of the testator, will, when his lips are sealed, read into his solemn declaration sufficient to effectuate his obvious intention. It is apparent that the will was not drawn by a skilled draftsman, and yet by one more or less conversant with technical legal verbiage. To my mind, it requires but a cursory examination of the instrument to discover, what is borne out as well by the closest analysis, that the

one dominant intent is to leave all the property to his wife and daughter. No other persons are mentioned in the will. Briefly summarized, the first clause provides for the wife, the second for the daughter, while the third seeks to dispose of the residue, at all events, to one or the other. It seems quite clear that the testator had no other beneficiaries in mind. If an intestacy has arisen, it is certainly not, as seems to be argued in behalf of the heirs at law, one contemplated or intended by the testator. It is, at best, an unintentional omission to dispose of a part of his estate upon a certain contingency. Under such circumstances, it should obviously be the court's endeavor to so construe the residuary clause, if consonant with rules of law, as to prevent such unintentional intestacy. Underlying the intention to give to wife and daughter his entire estate, there is the primary purpose to provide for the former at all hazards. The striking distinction in the forms of the first and second bequests points to some difference of intention operating in the testator's mind. Though the effect of each bequest is to create a trust fund, the first follows in order to effectuate what is practically the gift of an annuity of a definite sum, while the second is a specific devise in trust. Why the difference? The testator desired, before providing for anybody else, and without regard to how much of his property might be left over thereafter, to give to his wife absolutely the sum of $10,000 in gold per annum. This does not, in terms or by implication, exclude further gifts to her. The language is:

"I give and bequeath to my beloved wife Josephine Louisa Newcomb an annual income of ten thousand dollars per annum in gold or its equivalent, sufficient of my estate to be set aside and invested in good securities the income of which will net ten thousand dollars in gold per annum."

It appears from the record that gold in 1866, when the will was made, was still at a very considerable premium, and it was thus quite uncertain what portion of the testator's estate, valued at about $514,000, would have to be set aside in order to realize sufficient to provide for the annuity in gold. This may explain the primary provision of the will. The second clause, making the devise in trust for the benefit of the daughter, begins, "after providing for the above," so that the amount of, and, under conceivable circumstances, any, devise to the trustees was dependent on a sufficient surplus of securities, after setting aside enough to insure the annuity to the widow. While it was not to be expected that the devise would fail, yet its form is a clear indication of the desire to provide a substantial income to the wife before all else. Beyond these two clauses, the will contains only alternative provisions seeking to leave the balance of the property, including the corpora of the several trust funds, to wife or daughter.

Before taking up the residuary clause, two features of the first clause are to be considered. In the first place, the gift is one of personal property; and, so far as there is any remainder, it would, according to settled principles, not descend to the heirs, but to the personal representatives, or fall into a general residuary clause, provided such a one was contained in the will. Secondly, there is in this first clause no gift or bequest of the title to the securities.

There is the absolute gift of an annual sum, and then a direction that sufficient property be set aside to produce that sum. Neither by expression or implication is the title to the securities which are the foundation of the fund taken out of the testator. There is the direction or the power to set them aside, but in this clause, at least, nothing is done with them when they shall have accomplished that purpose. The title remained undisposed of, and, had the will consisted but of that clause, it would have followed that Warren Newcomb had died intestate as to the remainder in the fund, and that it would have had to be distributed according to the statute of distributions. It is perfectly clear that no disposition of the title was made. Now, what is the language of the residuary clause? "After providing for all the previously-named bequests I give and devise to my dear wife Josephine Louisa Newcomb all the residue of my estate absolutely." The residue includes everything which has not been effectually disposed of in other clauses of the will. That of which disposition has not been attempted is as much a part of it as that which has not been disposed of with proper effect, as lapsed and void legacies. Morton v. Woodbury, 153 N. Y. 247, 47 N. E. 283; Reynolds v. Kortright, 18 Beav. 417. All reversionary interests are included, whether known or unknown, immediate, contingent, or remote. Floyd v. Carow, 88 N. Y. 569. It is quite immaterial what meaning we give to the words "after providing,"—whether restrictive or descriptive. Granted that they exclude what has been given before, even to the extent that in the event of failure or lapse the gift would not fall in the residuary clause (Stephenson v. Asylum, 27 Hun, 380), it is clear that that which has not been given cannot lapse, but is necessarily just that on which the residuary clause fastens. Though the securities have been set aside to produce the income, a property right remains in their ultimate disposition, and this falls into the residue. The use of the words "all" and "absolutely" in connection with the word "residue," although quite unnecessary, so far as enlarging the legal limits of the residuary fund, show how thoroughly it was the testator's intention to have all the balance of his estate go to his widow. I cannot follow the argument that the residuary clause is merely a partial one. Three propositions are argued: First, that there was an actual bequest in remainder in this fund to the daughter, contingent upon her surviving her mother. There can be no question as to this. Nor as to the second proposition, if it is limited to the statement that there is no specific bequest in terms of this estate in remainder to any one in case the daughter did not survive the mother. The third, however, that the residuary bequest to the wife is expressly limited so as to exclude this estate in remainder, is, to my mind, based on an erroneous construction, both of the testators' intention, and of the words of alleged limitation at the beginning of the third clause. In the first place, this is not a case of a lapsed or void legacy, so that the words of alleged limitation could circumscribe the residuary clause and prevent additions thereto. This was so in Stephenson v. Asylum, supra, relied on by the heirs at law. There the gift in the residuary clause was so specifically limited to what might remain after

providing for certain absolute legacies that it would have enlarged
the testator's intention to have included therein a lapsed legacy. In
this case, however, the residuary clause seizes, in the first instance,
on the very remainder in question. The rule is settled that where
the residuary bequest is not circumscribed by clear expression in the
instrument, and the title of the residuary legatee is not narrowed by
special words of unmistakable import, he will take whatever may
fall into the residue,—whether by lapse, invalid disposition, or other
accident. Riker v. Cornwell, 113 N. Y. 115, 127, 20 N. E. 602. In
the case just cited, the words "after payment of all the legacies and
carrying out all the trusts and provisions made," etc., preceding a
residuary bequest, were held to be merely words of description, and
not of exclusion. So, in Carter v. Board, 144 N. Y. 621, 39 N. E. 628,
where, after four specific bequests, the will directed the executors to
divide whatsoever moneys might remain "after payment of the fore-
going bequests" between certain named beneficiaries, and two spe-
cific bequests were invalid, the court construed the words "after pay-
ment" as descriptive merely, and not intended to confine the residue.
In Re Benson, 96 N. Y. 499, cited by the heirs at law, this language
occurs:

"The testator may, by the terms of the bequest, narrow the title of the
residuary legatees, as where it appears to be his intention that the residuary
legatee shall have only what remains after the payment of legacies; and he
may so circumscribe and confine the residue as that the residuary legatee
will be a specific legatee, and then he will not be entitled to any benefit
accruing from lapses unless what shall have lapsed constitute a part of the
particular residue."

It is to be observed, with regard to this dictum, referring to lapsed
legacies, and not to property undisposed of, that the words "after
the payment" are not used, specifically, to indicate what words
would limit the residue, but as expressive of the intention as dis-
closed by the entire scheme of the will. Thus Judge Earl's language
in the Benson Case, in reference to this phraseology, was explained
in Carter v. Board, supra, where Gray, J., said that the language is
to be taken "not as laying down an absolute rule that a residuary
clause is necessarily circumscribed by the insertion of such words,
but as suggesting that they might evidence an intention on the part
of the testator that the residue is to be confined to so much only as
would remain after deducting from the estate the aggregate amount
of all previous bequests," at page 624, 144 N. Y., and page 628, 39 N.
E. In any event, the language of the will in the Benson Case was
that the residuary legatee should "have only what remains after the
payment of legacies," and what remained in the case before me is
the very remainder in dispute; and, as I have already said, the re-
siduary clause seizes upon that, whatever construction we give to the
language of the clause. I find in the interpretation which gives this
remainder to the widow no contravention of any rule of law or of
any statute. The question remains simply one of intent, as gleaned
from the entire testamentary disposition, not one derived from the
use of particular words and phrases, which, in a different will and
in a different context, might aid, and not defeat, an unmistakable
purpose of the testator. Reduced to its lowest terms, the argument

of the heirs at law amounts simply to this: Because in the latter part of the third article there is a specific gift of the remainder to the daughter in the event of her surviving her mother, while there is no specific mention of the remainder in making the widow a beneficiary, therefore there is disclosed an intention not to dispose of the remainder in the event of the daughter's prior decease. It seems to me that it is quite erroneous to argue that this discloses any intent whatsoever, or that the testator recognized and defined a distinction between the remainder in fee, under article 1, and the residue mentioned in article 3, or any of the similar propositions advanced to support a contrary interpretation to the one here adopted. Were the heirs at law to prevail in this branch of the case, it would not be on account of any intention disclosed in their favor, but owing to a clear omission to express or indicate an intention existing as to a specific portion of the estate. I am satisfied that this case falls within such authorities as Lamb v. Lamb, supra; Floyd v. Carow, supra; Wager v. Wager, 96 N. Y. 164; Carter v. Board, supra; In re Miner's Will, 146 N. Y. 121, 40 N. E. 788; Meeks v. Meeks, supra. Under the circumstances of this case, in the absence of words manifestly excluding the remainder from the operation of the residuary clause, it embraces, consistently with the testator's intention, that of which no disposition had theretofore been made. It may be well, in conclusion on this branch, to refer to the recent case of Meeks v. Meeks. There, after the bequest of a life estate, to the testator's widow, of the income of a trust fund set apart for that purpose, a residuary disposition was made of all "excepting that part hereinbefore appropriated." The same contention was made here,—that the remainder over after the life estate passed to the heirs at law; but O'Brien, J., writing for an undivided court, said:

"In making final disposition of his residuary estate, * * * it is obvious that the testator intended to dispose of all his property as therein indicated, except the life interests which had been carved out of the estate by the antecedent provisions of the will, and hence the words 'excepting that part hereinbefore appropriated' apply to the life interest of the widow only, and not to the corpus of the fund. We should, if possible, give to the language of the testator a construction which will render the instrument operative, rather than invalid; and an interpretation that will produce intestacy as to any part of the estate is to be avoided, if possible." At page 71, 161 N. Y., and page 278, 55 N. E.

I am, therefore, of the opinion that the remainder in the fund, under article 1 of the will, vests in the widow, by virtue of the general residuary clause in her favor.

On the second branch of this case (that is, the right of Mrs. Newcomb to terminate the trust at this time, under the provisions of the statutes cited supra), I feel myself constrained to follow the decision in Oviatt v. Hopkins, 20 App. Div. 168, 46 N. Y. Supp. 959. In the absence of an adjudication by the appellate division of this department, I must regard that case as controlling, even though I recognize that, despite the peculiar provisions of our statutes as to the estate vested in the trustee, there is no property right in him, in the true sense of the term. His beneficial interest would seem to be limited to his right to compensation for services; and it seems,

perhaps, like straining construction to say, even as to trusts created before the passage of the act, that the provision in question permits the taking of property without due process of law. Trusts created after the passage of the act have been sustained. Snedeker v. Congdon, 41 App. Div. 433, 58 N. Y. Supp. 885; Mills v. Mills, 50 App. Div. 221, 63 N. Y. Supp. 771. As to those theretofore created, I am compelled to follow the Oviatt Case, until a contrary adjudication is rendered in this department. I therefore hold that the trust is not now terminable.

Submit decree in accordance with the conclusions expressed in this opinion. Ordered accordingly.