Taft, J.
At the outset, it may he observed that no relief can be given by the Probate Court under complainant’s petition, except with respect to some property of the estate of Patrick Sexton, deceased. See emphasized portion in above quotation of Section 10506-67, General Code. See also Section 10506-73, General Code, and In re Estate of Leiby, 157 Ohio St., 374, 105 N. E. (2d), 583.
Therefore, in order to sustain complainant’s contention that the Probate Court has jurisdiction to give some relief, we would have to decide that the personal property, for which a receipt was given to the executrices in 1930 by those entitled to life interests therein, either (1) could not lawfully have been distributed as it was by the executrices to themselves as those entitled to life interests therein, or (2) remained at least in part property of the estate of Patrick Sexton even after distributed by the executrices to those entitled to life interests therein, or (3) again became property of the estate of Patrick Sexton, deceased, on the termination of those life interests therein.
It is arguable that words, such as those found in the first three sentences of paragraph 4 of Patrick Sexton’s will, would require the executrices to hold the residue either as executrices or as trustees and pay only the income therefrom to themselves as life tenants, especially where such residue was composed entirely. of money and negotiable bonds. See In re Will of von Kleist, 265 N. Y., 422, 193 N. E., 256; Lapham v. Martin, 33 Ohio St., 99, 104, 105; Ratliff v. Warner, 32 Ohio St., 334, 340, 342, 343. If so, they could not lawfully distribute that residue before the termination of the life interests therein. However, if, in his will, Patrick Sexton expressed an intention that possession of the residue should be given to the two daughters to whom he gave life interests therein, that expressed intention must be given effect. Posegate v. South, 46 *131 Ohio St., 391, 21 N. E., 641; In re Will of von Kleist, supra; 33 American Jurisprudence, 708, Section 222; 3 Woerner’s American Law of Administration (3 Ed.), 1557, Section 456.
In the fourth sentence of paragraph 4 of his will, Patrick Sexton gave to his two named daughters “so long as they shall share said use and income” and to the one of them, “to whom all of said use and income may accrue,” the “full power and authority to convert” the residue of his estate “into money without the intervention of any court.” The life beneficiaries could certainly not convert any part of the residue into money without having possession of the residue; and they could not so convert it without the intervention of a court if, in doing so, they were acting as executrices or trustees under the supervision of the» Probate Court. Further on in this sentence, the life beneficiary daughters are given “full power to invest and reinvest” the residue. This power would necessarily include a right to possession and control over the residue. Although there is a direction in the third sentence of paragraph 4 of the will for conversion into money at the end of the life interests, there is nothing in the language of the will which requires the executrices to make that conversion. See Posegate v. South, supra; Flickinger v. Saum, 40 Ohio St., 591, 600, 601; Lapham v. Martin, supra, 103. It certainly would not be necessary to have either an administrator or executor or a Probate Court trustee to arrange for such a conversion into money at the end of the life interests.
In our opinion, the language of paragraph 4 of the will clearly expresses an intention that possession of the residue should be delivered to Patrick Sexton’s two daughters as life beneficiaries thereof. That being so,'the money and liberty bonds, for which a receipt was given to the executrices, could lawfully be distributed by the executrices to themselves as those en *132 titled to life interests therein. Furthermore, such distribution could lawfully be made without requiring security from the distributees. Posegate v. South, supra, 396; In re Will of von Kleist, supra; Buckman’s Trustee v. Ohio Valley Trust Co., 288 Ky., 114, 155 S. W. (2), 749, 138 A. L. R., 436. See annotations at 14 A. L. R., 1075, 101 A. L. R., 273, 138 A. L. R., 447; Lapham v. Martin, supra; Lapham v. Martin, 38 Ohio St., 538. Thus, in Buckman’s Trustee v. Ohio Valley Trust Co., supra, it is stated:
“* * * where the life tenant is given the possession and use of the property, it is not incumbent upon the executor to require a bond of him. The remainder-man, or someone representing him, may step in, however, and require the execution of a bond, if the life tenant shows a disposition to waste or destroy the property. ’ ’
When such distribution was made, the property so lawfully distributed would thereupon cease to be either property of the estate of Patrick Sexton or subject to any further administration as a part of that estate. Flickinger v. Saum, supra; Ratliff v. Warner, supra; Langley v. Farmington, 66 N. H., 431, 27 A., 224, 49 Am. St. Rep., 624; 3 Woerner’s American Law of Administration (3 Ed.), 1554, 1557, Sections 454, 456.
Thus in Posegate v. South, supra, after a determination that the words of the will expressed an intention that the life tenant was to have possession of the personal property with respect to which she had been given a life estate, it was said in the court’s opinion at page 396:
“It may be, that a court of equity, would have compelled the widow to furnish the legatees of the remainder, an inventory of the property received by her from the executor [see annotation, 45 A. L. R., 519]; and, that a proceeding might have been maintained by them against her to require,security against *133 its improper disposition, likely to defeat their estate in it. * * * Bnt we are of opinion, no duty was im: posed upon the executor, to exact an inventory from the widow when he delivered the personal estate to her according to the requirement of the will, or to institute proceedings to protect the donees in remainder; nor, is he responsible for any disposition made of the property by the widow after it lawfully came to her possession, or thereafter accountable for it, in his representative capacity. It cannot be claimed, that any express duty is enjoined by the will upon the executor, with respect to the estate in remainder. He is not required or directed to take charge of the unconsumed personalty, and divide it among the children. It is given by the will directly to them, to be equally divided among them. ’ ’
In the opinion by Lehman, J., in In re Will of von Kleist, supra, it is stated:
“When the testator bequeathed to his children the usufruct of his property with remainder to their issue, it is clear that he intended that the remaindermen should have the right to hold the custodian of the property responsible for the property when the time comes for delivery to them. Where a testator indicates that possession of a fund should be delivered to a life tenant, the life tenant becomes substituted as custodian f-or the executor and is alone accountable for its payment to the remainderman.”
In Langley v. Farmington, supra, it is said in the opinion:
“If she had given a bond as executrix * * * The bond would not have protected the remaindermen against the unauthorized, negligent, or fraudulent use or disposal of the property while in her possession as life tenant, for the executrix would not be responsible to the remaindermen for the preservation of the property after it passed into the possession of the life tenant.”
*134 As complainant points out, the case of Ratliff v. Warner, supra, involved a bequest of personalty in absolute terms with a limitation over on a contingency and did not involve a bequest of personalty to one for life with remainder to another; and there are statements in the opinion in that case which indicate that generally, where there is a life estate or life use given with respect to money with a remainder after such life estate to others, then the executor does have a duty to protect the interests of the remaindermen, either by holding the principal until the termination of the life estate or by taking security for it from the life tenant. There are similar statements in the opinions in Lapham v. Martin, supra, and Schwartz v. Gehring, 7 C. C., 426, 4 C. D., 662. This general rule may also be applied with respect to a bequest of a residue of a testator’s personal estate to one for life with remainder to another, because the protection of the remainderman against depreciation in value of the personal property will generally require the conversion of the personal property into money. Consequently, in effect, a bequest of money will result from such a bequest of the residue of a personal estate. With respect to this general rule, it is said in 3 Woerner’s American Law of Administration (3 Ed.), 1557, Section 456:
If * * * it is fairly inferable from the will, construed under the ordinary rules, that, in bequeathing the residue of his personal estate to one for life with remainder to another, he did not mean to deprive the life tenant of the specific possession and use of the property bequeathed, such life tenant is entitled to all such property in specie; and the same rule applies to a general residuary bequest for life with remainder over.”
That this would be a correct statement of the law of Ohio is apparent from an examination of the rea *135 sons advanced in the opinions for the decisions rendered in the subsequent cases of Flickinger v. Saum, supra, and Posegate v. South, supra.
Complainant argues further that those two cases are distinguishable from the instant case because the life tenant in each of them had a power to consume the principal assets and the life tenants in the instant case had no sueh power. As a reading of the opinions in those two cases will disclose, the only significance, with respect to questions such as involved in the instant case, of the fact, that a testator gives such a power to a life tenant of certain personal property, is as an expression of such testator’s intention that such life tenant should have possession and control of that personal property. Obviously, the expression of such an intention may, as in the instant case, clearly appear from the words of a will, even where the will gives the life tenant no such power to consume.
In our opinion, where personal property is given by will to one for fife with remainder over to another and where the will expresses an intention that the life tenant shall have possession and control of the personal property bequeathed during his life and where the executor of the estate lawfully distributes such personal property to the life tenant and where no bond is ever required from the life tenant, such personal property or its proceeds will not thereafter be or, on the death of the life tenant, will it again become property of such estate. Complainant has not called our attention to any authority which would support a different conclusion. Except possibly for the first paragraph of the syllabus in Davis v. Conwine et al., Exrs., 25 Ohio St., 668, we have found no such authority. We say “possibly” for several reasons. First, in view of the statement of law in the second paragraph of the syllabus in that case, it appears that the state-ment in the first paragraph was dicta. Second, no au *136 tliorities are cited in support of the statement in that first paragraph. Third, if we assume that there can be a remainder by way of reversion after a life interest in personal property which this court held there was not in that case, then it is impossible to reconcile the statement of law in paragraph one of the syllabus in that case with the subsequent decisions and pronouncement of the law by this court in Ratliff v. Warner, supra; Flickinger v. Saum, supra; and Posegate v. South, supra.
In support of his contention with respect to the jurisdiction of the Probate Court, complainant relies upon the following provisions of Section 10501-53, General Code (Section 2101.24, Revised Code):
“Except as hereinafter provided, the Probate Court shall have jurisdiction:
i ( * * *
“3. To direct and control the conduct, and settle the accounts of executors and administrators, and order the distribution of estates;
“4. To appoint and remove guardians and testamentary trustees, direct and control their conduct, and settle their accounts;
i ( * #
“13. To direct and control the conduct of fiduciaries and settle their accounts.
“Such jurisdiction shall be exclusive in the Probate Court unless otherwise provided by law.
“The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute. ’ ’
With respect to the paragraph numbered three of this statutory section, it may be observed that the Probate Court completed its direction and control of the conduct and settlement of the accounts of the executrices and approved their reported distribution in *137 1930, about 23 years before tbe filing of complainant’s petition in the instant case. As hereinbefore pointed out, that distribution terminated any rights of the estate in or to the property so distributed. In view of the nonexistence since 1930 of any executors or administrators in the Patrick Sexton estate, this part of the statute can have no possible application in the instant ease.
With respect to paragraph 4 of Section 10501-53, it is conceded that the Probate Court has never appointed a guardian or testamentary trustees with respect to the Patrick Sexton estate. By the words of this paragraph, it is apparent that the Probate Court’s right to direct and control the conduct of trustees and settle their accounts relates only to trustees which it has appointed. With respect to the paragraph numbered 13, there is no one in the instant case who comes within the statutory definition of “fiduciary” (Section 10506-1, General Code [Section 2109.01, Revised Code]), so that that paragraph can have no application.
As to the “plenary power” provisions of Section 10501-53, General Code, there must first be some “matter properly before the court” before its words can be applicable. In the instant case, we have an estate in which the executrices filed a final account and report of distribution which was approved 23 years before complainant filed his petition; and the complainant’s petition relates to property as to which the estate has no title or right to possession. There is therefore no longer any matter properly pending before the Probate Court which might bring the “plenary power” provisions of Section 10501-53, General Code, into operation.
Complainant refers to Johnson v. Johnson, 51 Ohio St., 446, 38 N. E., 61, and especially to that part of paragraph two of the syllabus referring to a life ten *138 ant of personal property under a will as “a quasi trustee for those in remainder.” See also annotation at 137 A. L. R., 1054. As that case holds, one who receives possession of personal property as life tenant under a will, as well as one to whom he wrongfully transfers such personal property, may be subject to obligations to remaindermen. But it is significant that such obligations in the J ohms on case were enforced by proceedings instituted by the remaindermen in the Common Pleas Court — not by any proceedings instituted in the Probate Court.
Complainant argues that the Probate Court had jurisdiction pursuant to the provisions of Section 10506-40, General Code (Section 2109.35, Revised Code), and Section 10509-185, General Code (Section 2113.58, Revised Code), by reason of a fraud perpetrated upon the Probate Court in 1930 by the executrices and by reason of a fraud perpetrated upon the Probate Court in 1937 by defendant.
Section 10506-40, General Code, reads in part:
“The order of the court upon the settlement of an account shall have the force and effect of a judgment. Such order may be vacated only as follows:
“(a) Such order may be vacated for fraud, upon motion of any person affected thereby, or upon order of the court at its own instance, if such motion is filed or order is made within one year after discovery of the existence of the fraud.”
Our attention has not been called to any such motion or order. Cf. In re Estate of Stafford, 146 Ohio St., 253, 65 N. E. (2d), 701, decided under a form of that statutory section not containing such a requirment with respect to a motion or order or such a limitation with respect to the time of such a motion or order. It would appear, therefore, that the 1930 settlement of the final account of the executrices in the instant case still has the “force and effect of a judgment.” As *139 hereinbefore pointed out, the Patrick Sexton estate was closed and its assets lawfully and completely distributed in 1930. We do not see, therefore, how defendant could perpetrate a fraud upon the Probate Court in 1937 with respect to that estate.
Although it was not enacted until 1932, complainant argues that Section 10509-185, General Code, indicates a legislative intent that the Probate Court was to have continuing jurisdiction with respect to property delivered to a life tenant. That section reads:
“When by a last will and testament the use or income of personal property is given to a person for a term of years or for life, and some other person has an interest in such property as remainderman, the court, unless such last will and testatment otherwise provides, shall have authority to deliver such personal property to the person having the limited estate, with or without bond, as the court may determine; or the court may in its discretion order that such property be held by the executor or some other trustee, with or without bond, for the benefit of the person having the limited estate. If bond is required of the person having the limited estate, or of the trustee, it may be increased or decreased, and if bond is not required in the first instance it may be required, at any time prior to the termination of the limited estate, at the discretion of the court.”
Even if we assume that this statutory section could have been applied with respect to the Patrick Sexton estate notwithstanding the time of its enactment, we believe that the time for such application has passed. In the instant case, after the delivery of the personal property in 1930 to those having life interests therein, the only thing which this statute authorized the Probate Court to do with respect- to that personal property was to require a bond and, by the words of the statute, this could only be required “prior to the ter *140 ruination of the limited estate.” The limited estate has terminated and no bond was ever required.
Our conclusion is that the Probate Court properly dismissed this proceeding. The judgment of the Court of Appeals is, therefore, reversed, and. that of the Probate Court affirmed.

Judgment reversed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Stewart and Bell, JJ., concur.